Our case today is 2016-2344 Worldwide Oilfield v. Ameriforge. Mr. Homer, please proceed.  Good morning, and may it please the Court, before I address the litany of error, both legal and factual, from this decision of the Board, there are three common themes that run throughout this appeal, and I want to address them up front because they're often layered on top of one another. First, the Board misapplied the burden of proof on a number of claim elements and indulged the presumption in favor of the petitioner, often being critical of or faulting the patent owner for failing to disprove the presence of several claim elements, often without even reviewing evidence or evaluating evidence from the petitioner. So that's the first. The second is many of the arguments and evidence and configurations came in on reply. At that point in the proceeding, our only option is to take the deposition of their expert witness and file observations with the Court, which we did. It's apparent from the decision, however, that every single one of those observations was ignored. All of the testimony is ignored, leaving Dr. Stevick's testimony uncontroverted, essentially, or apparently uncontroverted if you look at the decision. And then finally, even then, when the petitioner hadn't quite made its case, the Board contributed its own legal work on behalf of the petitioner. So first I want to talk about the Dare Baker and what— You think that they wrongly put the burden. Show me in the opinion what you think the best example of the Board inaccurately placing the burden on the patentee. They do so with respect to the adjacency. Show me the best place in the opinion, page 21. Page 21. That is where they state, although there is some— They decide on one of their several places for the cutting edge because they can't decide where the cutting edge is. But they decide that it's on the corner and that the incline plane is separated by outboard 212 of Baker. And they say, although there's some expanse of the horizontal surface of sleeve 212 at the point of the minimum size, it is not apparent why that precludes a determination that the minimum size is nonetheless adjacent to the cutting edge. They don't put the petitioner to their burden to prove adjacency. They don't define adjacency. And, in fact, they concede that they are not adjacent at the final hearing, and that's briefed in my reply brief. Mr. Robinson is asked, well, isn't the problem that they're adjacent? Are they adjacent? He says, well, in terms of Schengen vertex, no, they're not adjacent in terms of being right next to one another. And he comes up with this theory of functional adjacency. Well, they're adjacent in terms of what they do, not in terms of where they are, which I don't quite understand. But, nevertheless, they concede that they're not adjacent in the final hearing, and yet here we're faulted for not disproving adjacency. Just curious, if the upper corner is considered the cutting edge of Baker, why isn't the minimum size of that aperture adjacent to that upper corner, since that minimum size remains consistent all the way along the length of that, I don't know, element 212? So, this is... I don't see the claim language necessarily saying that the inclined surface or the angled surface has to begin right at where the cutting edge is. Because the gate defines the aperture. The gate defines the aperture. That's what the claim language says. The aperture is defined by the gate. This, to me, it seems like creative writing, the notion that the aperture is... the size of the aperture is adjacent. I think it's pretty evident from the claim language that it says that the cutting edge is on one side, there's a single inclined surface, and defining the aperture. That defines the aperture, a single inclined surface, and that the aperture goes from minimum to a maximum adjacent, adjacent to the cutting edge to the distal end. Now, if I'm wrong on that, and the point you're making is correct on Claim 9, then you've got to reverse on Claim 14, because Claim 14 erases any question of whether we're talking about the aperture or the gate. Claim 14 says, cutting edge adjacent, single inclined plane. Did you make that argument? That if this understanding of the claim of language in Claim 9 is what I was hypothesizing, then as a separate matter, then Claim 14 has to be considered separately, independently, because separate Claim 14, in particular, specifically says that the inclined surface has to be adjacent right next to that cutting edge. That is brief in our reply brief. Yes, sir. I'm saying below. Well, we didn't get the, that wasn't urged below, and that was the creative writing of the board. That was one of those times when it wasn't the petitioner's argument, that was the board's theory. At least, and again, my, when I read it in the decision, I didn't fully understand, I'll be very candid, it was talking, it was trying to make the point that you're making. But again, the first time we saw it was in the decision, not in the briefing below. So, but yeah, we, since the first time we saw that, we have absolutely briefed it. But yeah, Claim 14 makes, erases any doubt about whether we're talking about the aperture, we're talking about the cutting edge being adjacent to the single inclined plane. I still think, though, that the natural, ordinary reading of Claim 9 gets you the same place as Claim 14. I still think of it as a frustro-conical aperture starting with the cutting edge and ending distal at the cutting edge. So that is the easiest one to see. The most egregious one, however, is related to the, to Claim 9, where it says that, well, that we're criticized because we failed, well, Claim 9, the board's analysis of Claim 9, which starts on page 21 and really goes through to 24. Here, they turn inherency on its head. And put simply, rather than putting the petitioner to the burden of establishing that, that claim element is met, that a force is imparted by the single inclined surface on a pipe to push the pipe out of the valve. So that's the whole claim element. Instead of putting them to the burden to show that that must necessarily occur in Baker, they flip the burden to us and fault us for not proving that it could never happen. In effect, asking us to disprove the operability of Baker. And that is, in Claim 9, this analysis of Claim 9, is really where the layers of error come into play. For example, they take a sentence fragment from our expert, where he says, it wouldn't necessarily, Baker wouldn't necessarily push pipe out of the valve in any and all circumstances. And they say, well, gosh, that's seemingly a recognition that in some cases it will. That is, if you ignore the 20 pages of briefing saying it wouldn't, and the rest of that sentence saying that it wouldn't. I took the board as saying, when it looked at the structure illustrated in Baker, and the structure illustrated in your 650 patent, the structures are so similar that you would expect the same outcome with them. So if one pushes, has a downward force on the cut tube, the other one likewise will, because they both have that inclined surface. So the testimony of our expert is that because the shearing face, the outlet board 212 of Baker is so large, it exerts a purely horizontal force on the pipe. It doesn't contribute a downward movement of the pipe. And it bends the pipe horizontally and anchors it inside the valve. So that's the testimony of our expert. That's why it wouldn't work, is because their cutting edge isn't adjacent to the single inclined plane, frankly. So therefore your expert was suggesting that Baker, as disclosed and patented, is inoperable. Absolutely. Inoperable to cut tubing and displace tubing at. See, because this is another thing. If it were more dignified, I would beg you to take a critical read of Baker. Because Baker does not disclose Baker's second and third embodiments. The single shearing embodiments don't disclose cutting tubing. And maybe that's a surprise to you, because the board says that it does. Because the part that the board's reading from... Is this the part where there was a debate over whether shearing and cutting or... No. That's not this debate. It's a different debate. We spend a robust amount of briefing in our response, dedicated to the correct position that Baker's single shearing embodiment does not expressly cut tubing. And the reason it doesn't is because Baker begins with a dual shearing valve. Figures one through five of Baker. Where there's a constant aperture through the bore and it shears a pipe or wire cable on top of the bottom. And it says, well, the problem with that is you get debris caught in the valve gate. So it says, it has a modified form of the President Invention. It refers to the first embodiment is the President Invention every time. And so you know when you're reading the patent that it says, President Invention, it means the first embodiment, valve 10. Anytime it says modified version of the President Invention, it's referring to the single shearing embodiment. And at the bottom of column nine, the top of column five, there's a pivot where it goes from talking about the double shearing to the single shearing. And in every single occasion where it talks about the single shearing, which is the configuration that's urged against us, it only discusses wire and cable. Wire and cable, wire and cable, wire and cable. 27 times it talks about wire and cable with respect to the single shearing embodiment. It never says anything about tubing. You're well into your rebuttal time. Would you like to save the remainder? Can I go a little longer? At your peril, go ahead. Yes, ma'am. The board cites as part of a sentence out of the conclusion that says that the President Invention provides a gate valve which can shear a line or other tubular member. Which if you read just that sentence, you might think that the single shearing embodiment can cut tubing. Except that refers to the present invention, not the modified forms of the present invention. The conclusion there pivots again back to the shearing invention. It talks about forms of the present invention, which provide for single shearing of cable towards the end of the conclusion. The petitioner has advanced the notion that, well, it also says that the present invention, or excuse me, the modified forms of the present invention have all the advantages, quote, all the advantages of the dual shearing embodiment except, and this is the part they don't quote, the single shearing embodiments will clear debris out of the valve, clear wiring cable out of the valve. So let's think about what that means. What's the implication of that? If they're right, I still think it doesn't expressly say that it cuts tubing. But let's say they're right for a moment. What does that mean? It means that Baker would cut tubing, Baker's single shearing embodiments, the modified version of the form of the present invention, would cut tubing, but it would only clear wire and cable.  Tubing would get caught in the valve body and only the wiring cable would be clear, in which case it couldn't meet the elements of claimant. And I will save all 42 seconds for that. All right. Mr. Robinson. May it please the court. My name is Eagle Robinson. I represent AmeriForge. The board here got it right. In this words, in this court's language from FMC Corp. v. Hennessey, seizing upon isolated words and phrases and the underlying opinion, Wam forgets that this court reviews judgments, not phrases and opinions. Can you just pick up where the other side left off about the meaning of Baker and the various embodiments and whether or not the embodiment the board relied on actually teaches the cutting of a tube such that it actually displaces the cut tube away from the gate valve? Certainly, Your Honor. Numerous places throughout the appendix, but I'll start with Baker itself. One of the very first sentences in the background, it's just talking about its invention, is that Right. His argument is, well, there's a present invention and there's a modified invention. And so when talking about the modified invention, which is the part that the board relied on, that section of Baker doesn't say anything about cutting a tubular member, unlike the other sections of Baker, which specifically does contemplate cutting wire or a tubular member. So that's the point he's focusing on. I'd like to hear your response to that. Certainly, Your Honor. First, not all of the sort of broad statements about the invention are couched in terms of the first embodiment or the invention and the modified invention. In the background section, it says, The present invention relates to a gate valve capable of shearing a wire line or a small pipe extending through its bore. That's not followed by any qualification or clarification about modified forms of the invention. Specifically, the portions towards the end of the specification, generally applicable statements about the invention that Mr. Homer was addressing, again, say wire line or tubing. So the additional clarification about the modified forms of the invention do talk about what is specific to the modified forms of the invention, but they don't detract from the broader statements, both at the very start of the background section and the broader statements in column six. And I guess your argument would be, wouldn't it, that even if we were inclined to potentially read it differently in line, if we had a de novo review, if we were inclined to read it, as the appellant suggested, with the present invention and the modified invention being two discrete and different embodiments, and if we didn't think that language applied, that's actually not our job, right? What's the standard of review that we use to determine whether or not the board was correct in what it found disclosed in the prior art? Your Honor, I would be very careful about telling you what your job is, but that sentiment is exactly consistent with— What's the standard of review that we use to decide whether the board got something right in terms of whether it was disclosed in the prior art? Certainly, Your Honor. In this instance— That's a question. What is the standard of review that we use? It is clear error for reading the prior art. That was close. Well, if you'll give me a moment, I can give you a sign. Do you know what it is? Say it. Substantial evidence, Your Honor. If it's a matter of two conclusions that can be drawn, it's substantial evidence supporting the board's conclusion. You should really know that, because when you're the appellee in these types of cases, the first thing you should come up here and say is, this is a substantial evidence case. We win, because that's the way it usually works. Thank you, Your Honor. Certainly. So why do you think when it came to the single shearing gate valve embodiment in Baker, Baker never talked about cutting a tubular member? It always talked about wire lines or cables. Just curious, why do you think it forgot or neglected or chose not to say tubular member, unlike in other sections of the reference where Baker was specifically talking about, for the double shearing gate valve embodiment, cutting a wire line or tubular member? Your Honor, one of the interesting things about Baker is that it talks about broadly the invention is for wire line or tubular, but even in talking about its dual shearing embodiment, it often talks about wire line as the example that it's specifically addressing. So the intent or the reasons behind describing it in that way are not necessarily clear from the face of the document, but in talking about specific examples, it talks about wire line, but broadly it is clear that it says it cuts tubing or wire line. And it's not just Baker that the Board reviewed in a vacuum. Dr. Steve Vick, AmeriForge's expert, analyzed the issue, specifically said, here's what a person of ordinary skill in the art would absolutely understand from what's said here. There's no reason that this would somehow exclude cutting tubulars. Ultimately, the Board reviewed that, specifically addressed the issue, and came down on the side that Baker does address cutting tubulars with its invention more broadly. Ultimately, a number of the arguments that Wom raises were waived in this case. Mr. Stevick admitted that the difference in the claim language between Claims 14 and 9 was not raised below. It was also not raised in the opening brief here. And so we believe that issue should have been waived. Ultimately, Judge Chen, to your point on Claim 9 specifically, the claim language of Claim 9 does not require that the inclined surface is adjacent to the cutting edge. More broadly, though, what the Board found was that all of Baker's surface 212 is the cutting edge. It is the narrow surface that performs the cutting function. And if the Court finds, as we believe it should, that substantial evidence supported that conclusion, it absolutely shares a vertex with the inclined surface. There can be no debate that those two surfaces meet in Baker's device. Now, Mr. Homer said that at the oral argument below, I conceded that the upper corner and the inclined surface were not adjacent. That is absolutely not correct. The discussion that that came up in was a question of if you construe adjacency in an ultra-narrow sense where those two surfaces must share a vertex, then if it's only the upper corner of 212, that does not share a vertex with the inclined surface. But nobody has asked for adjacency to be construed. The closest that WAM has gotten to asking for that first arose in its reply brief. In terms of WAM's assertion that the Board switched gears on the construction of cutting edge, that's just wrong. A narrow surface that performs the cutting function is the construction that WAM advanced. WAM won that issue. In the institution decision, the Board adopted that construction, and all of the parties have proceeded with it since. There has been no change. The Board found that Baker's surface 212 is a narrow surface that performs the cutting function. In terms of whether Baker's inclined surface imparts a downward force to push a cut pipe away from the gate, Judge Jen, to your point, the Board did look at the similarity between the structure between Baker and the 650 patent and said the inclined surface, when you cut a pipe, are going to perform in the same way. But again, they didn't do that. They did that based on Dr. Stevick's detailed analysis and comparison between these two structures. And Dr. Stevick's explanation that that inclined surface, just as a matter of the laws of physics, necessarily imparts a downward force. Now, WAM's primary argument about the Board's analysis of its expert, Mr. Perkins' testimony, is that the Board plucked certain phrases from Mr. Perkins' testimony about what would happen when that pipe is cut, if it sticks. I'd like to take a moment just to read the full sentence that Mr. Perkins provided. He said, Baker's design will not necessarily forcibly push a cut OCTG away from its gate in any and all circumstances, because in some cases, its broad shearing surface may not reliably cut, while in other cases, the Baker design may pinch to cut OCTG. Ultimately, what the Board did was analyze that and analyze Dr. Stevick's testimony, and ultimately chose not to credit Mr. Perkins' testimony. But the notion that the Board just ignored it completely is incorrect. The Board, at page 23 of the appendix, specifically addressed Dr. Stevick's skepticism about the 650 patent working in any and all circumstances, and ultimately, like it did everywhere else, didn't say we're not going to pay attention to WAM's arguments. They set out what they found, their factual findings, the evidence that supported those factual findings, and then went a step further to explain why a mere foregish showing on those factual findings had not been rebutted. Ultimately, what WAM asked this Court to do is to re-weigh the evidence on almost every factual issue in this case. To the panel's point a moment ago, every one of those factual issues comes down to an issue of substantial evidence. There is substantial evidence here, and under this Court's precedent, the possibility that two conclusions might be drawn is not enough to second-guess the Board's conclusion. Okay, thank you, Mr. Robinson. Mr. Homer? Thank you. In my remaining seconds, I'll remind the Court that one of the themes was our cross-examination of Dr. Stevick. It appears nowhere in the opinion. It's not cited, too. It's not discussed at all. It is absolutely relevant to a number of elements. Motivation to combine, whether or not there's reasonable expectation of success. In the deposition, he expresses great skepticism about whether or not our device would ever work, which begs the question, why would the ordinarily skilled engineers pursue a device they didn't think would work? Can I direct the Court to Appendix 971 and our observations? Okay, thank both counsel. The case is taken under submission. All rise. Court is adjourned.